**LAGOLAU TUILEATA and SAUFUA TUILEATA**
**for the Tuileata Family, Plaintiffs**

v.

**TALIVAA LIUPUA, Defendant**

No. 2-1956

High Court of American Samoa
Civil Jurisdiction, Trial Division

January 27, 1956

ARTHUR A. MORROW, *Chief Judge;* APE, *Associate Judge;* and MALEPEAI, *Associate Judge.*

OPINION AND ORDER

Heard at Fagatogo on January 10, 1956 before MORROW, *Chief Judge* and *Associate Judges* APE and MALE-PEAI.

Fea, counsel for plaintiffs.

Logo, counsel for defendant.

OPINION OF THE COURT

MORROW, *Chief Judge.*

On Dec. 9, 1955 the Tuileata Family of Malaeloa, acting by Lagolau and Saufua Tuileata, filed its petition seeking

the eviction of defendant Talivaa Liupua from that portion of the land Olovalu near Malaeloa now occupied by him. The last Tuileata died in 1952 and has no successor as yet.

The Tuileata Family claims that the land involved is the communal property of the Tuileata title and that representatives of the Family have ordered the defendant to vacate it.

Prior to the hearing the Court viewed the land in the presence of Tuileata family members and the defendant. At that time the defendant informed the Court that the land was Tuileata land and that he was occupying it pursuant to permission given him by the Tuileata in 1925. At the hearing Talivaa on the witness stand testified as follows:

"Q   Now, when the Court was out to see the land yesterday and questioned you, I believe you told us that this land was Tuileata land and that you had gone on it by permission of the Tuileata in 1925, is that correct?

"A   Yes.

"Q   Now, we understood from what you said that the Tuileata gave you permission and you have since occupied the land under that permission given to you in 1925; now, is that correct?

"A   Correct.

"Q   Well, who cut the big trees?

"A   Myself."

Talivaa also testified that in 1934 his wife, who already had a baby at her breast, also nursed Meli, the baby daughter of the Tuileata and his wife, because Tuileata's wife was unable to nurse the latter child, and that out of gratitude for what Talivaa and his wife had done for the child, Tuileata said to him (Talivaa) that "I (Tuileata) do not know how to repay your kindness to me. But the land I assign to you to put in your plantations in Olovalu you can go ahead and plant your plantations as long as you live."

Although this testimony related to a transaction between the party defendant and a deceased person, we regard it as admissible in evidence, since we do not have a so-called dead man's statute in American Samoa rendering a witness incompetent to testify as to a transaction with a deceased person.

Saufua testified that instead of entering upon the land and occupying it in 1925 Talivaa first entered upon and occupied it in 1938 and in another part of his testimony he said that the entry and occupation began 12 years ago which would be in 1944. Alapa, a chief from Malaeloa, who has lived there all of his life and who is about 75 years old, testified that Talivaa has lived on the land "30 or more years." He also testified that "Tuileata told me that he permit Talivaa to go and work on the land and that was the same statement made by Talivaa given to me." And Alapa also stated on the stand "I did not know that Tuileata told Talivaa to have that piece of land. The only thing I heard Tuileata to go ahead and put on any kind of plantations he wants to put on the land, bananas, breadfruits, coconuts, whatever;" that Talivaa had made the same statement to him.

We believe the weight of the evidence very clearly preponderates in favor of the view that Talivaa entered upon and began to occupy the part of the land Olovalu, now occupied by him, in 1925, as he testified, and we so find. We further find that the land is the communal family land of the Tuileata Family; that the entry and occupation was pursuant to the permission of the then Tuileata given in 1925 and repeated by Tuileata again to Talivaa in 1934 by telling him that he (Talivaa) could "go ahead and plant your plantations as long as you live." We believe from the evidence that when the Tuileata gave Talivaa permission to enter upon and use the land, he gave him a license but did not transfer ownership of the land to Talivaa. In fact, ma-

204

tai Tuileata could not have given the land to Talivaa because admittedly there was no written approval by the Governor. Sec. 1282 of the A. S. Code, among other things, prescribes that "It is prohibited for any matai of a Samoan family who is, as such, in control of the communal family lands or any part thereof, to alienate such family lands or any part thereof to any person without the written approval of the Governor of American Samoa."

■ A license is "An authority to do a particular act or series of acts upon the land of another without possessing any estate or interest therein (citing cases)." Black's Law Dictionary (3rd Ed.) Some courts have held that such a license is not revocable where the license has been executed by the licensee's expending money or labor in reliance thereon. Other courts have held that such a license, although executed, is revocable. 33 Am.Jur. 408–410. A majority of the courts comprising a third group have held that while an executed license is revocable, the licensee "is entitled to compensation or reimbursement for expenditures made by the" licensee "upon the property on the faith of the license (citing *Wynn v. Garland,* 19 Ark. 23 and many other cases)." 33 Am.Jur. 411.

■■ Pursuant to the permission given him by the Tuileata, Talivaa entered upon the land, expended much labor in cutting down large trees on it and in putting in plantations. He has built a house on it. In the case of *T. Magalei et al. v. R. S. Tago Sianava,* No. 23-1955 (H.C. of Am. S.) in which much labor and money, including the building of two houses, had been expended by the licensee in reliance upon a parol license to enter upon and occupy certain land near Faleniu, this Court said: "The Courts of American Samoa have been faced with this same problem before. We have held under circumstances similar to those in this case that the licensee may retain possession of the property and

205

make use of it in accordance with the terms of the license until such time as the value of the use of the property is equal to the value of his expenditures less the value (after they are torn down) of any buildings which he has erected on the land and can remove therefrom when he leaves it. There are cases in which this rule may be impossible to apply because the value of the use of the license over any specified future period within the lifetime of either the licensor or licensee may not equal the expenditure already made in reliance on the license. Such was the case of *Daniel Foster v. Olotoa*, No. 15-1953 (H.C. of Am. S.) in which we applied the rule that a parol executed license could not be revoked."

█ Since a parol license is not an interest or estate in land, it cannot be the subject matter of inheritance by the heirs of Talivaa and it must at the very latest come to an end at his death unless after his death the Tuileata people should elect to continue it. "A license being a personal, non-assignable, privilege ordinarily is terminated by the death of either the licensor or the licensee, unless, in case of the death of the licensor, his heirs elect to continue it in force." 37 Corpus Juris 289. It should be stated that the death of the Tuileata, who gave the permission, did not terminate the license. He was the matai in control of the family lands, but the lands were the property of the family, not his. The Samoan family lives on and on even though the matai dies. The individual members of the clan (family) die, but the clan (family) does not.

Talivaa is 61 years old. The Court viewed the land and could see what he has done on it, how much labor he must have been put to to cut down large trees and put in plantations on it. To require him to leave the land now and to hand over his plantations and house to the Tuileata Family after reliance upon the license from the Tuileata would not be just. We think, in view of his age of 61 years and the

evidence, that the only practical way to compensate Talivaa is to allow him to continue to occupy the land and use it for plantation purposes as long as he lives, precisely as the Tuileata told him he could do out of gratitude to Talivaa and his wife for what was probably the saving of baby Meli's life. However, Talivaa should not put in any plantations in new places on the land.

Upon facts practically the same as those in the present case the Court in *Tago Loe, Mauga S. P. and Te'o v. Sami and Faafeu Mauga*, No. 33-1947 (H.C. of Am. S.) decreed that Tago Loe, who, in reliance upon a parol license, had entered upon land, built a house and put in plantations thereon, could continue to occupy and use it "during the remainder of his natural life unless such license be sooner terminated by agreement or otherwise according to law."

### ORDER

Accordingly plaintiffs' petition should be and it is hereby dismissed. It is further ORDERED that Talivaa Liupua may continue to occupy and use for plantation purposes that part of the land Olovalu near Malaeloa, now occupied and used by him for such purposes, during the remainder of his natural life unless his license from the Tuileata to occupy and use such land for such purposes shall be sooner terminated by agreement or otherwise according to law. And it is further ORDERED that said Talivaa Liupua may continue to maintain and use his house on such land for such period. And it is further ORDERED that said Talivaa Liupua shall not put in any plantations in new places on such land.

Costs in the sum of $18.00 are hereby assessed against the parties, $9.00 to be paid by Lagolau and Saufua Tuileata, acting for the Tuileata Family, and $9.00 by Talivaa Liupua, all costs to be paid within 30 days.